<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ABUSSAMAA RASUL RAMZIDDIN, | : | |
| | : | Civil Action No. 09-4829 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MONMOUTH COUNTY SHERIFF | : | |
| DEPARTMENT, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Abussamaa Rasul Ramziddin
Federal Detention Center
P.O. Box 562
Philadelphia, PA 19105

**WOLFSON**, District Judge

     Plaintiff Abussamaa Rasul Ramziddin, a pre-trial detainee formerly confined at the Monmouth County Correctional Institution in Freehold, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Second Amended Complaint.

At this time, the Court must review the Second Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Second Amended Complaint and are accepted as true for purposes of this review.

Plaintiff is a federal pre-trial detainee[1] who was confined at Monmouth County Correctional Institution beginning on or about July 23, 2009.

Plaintiff alleges that, upon his arrival, unnamed "staff" of MCCI immediately threw away his prayer rug as a security violation, threw away his kufi[2] because the color was not allowed, and threw away various other cosmetics and hygiene products.

---

[1] Plaintiff is awaiting trial in United States v. Ramziddin, Criminal No. 07-0093 (D.N.J.), in which he has been charged with Interference with Commerce by Threat or Violence in violation of 18 U.S.C. § 1951(a).

[2] A "kufi" is a "close-fitting brimless cylindrical or round hat" that is "traditionally worn by persons of African descent to show pride in their heritage and Muslim religion."  Booth v. King, 2006 WL 287853, *1 (E.D. Pa. Feb. 3, 2006), rev'd in part, 228 Fed.Appx. 167 (3d Cir. 2007).

Plaintiff alleges that the Islamic diet tray does not contain Halal food from an Islamic vendor.  Plaintiff alleges that Jewish prisoners receive food that conforms to their religious needs.  Plaintiff alleges that the General manager of Gourmet Dining Services responded to his grievance by advising jail officials that the food served met the Islamic diet requirements, although Plaintiff disputes the correctness of this conclusion.  Plaintiff has also met with Lt. James Howell about the food and notes that Lt. Howell requested that Gourmet Dining Services provide larger portions during the holy month of Ramadan.  Nevertheless, Plaintiff alleges that the meals served at MCCI do not meet Islamic dietary requirements.

Plaintiff also alleges that he has unsuccessfully attempted to return Haram (forbidden) foods to the contracted commissary provider Swanson Services Corporation.

Plaintiff alleges that on August 7, 2009, his kufi, white in color, was taken off his head during a pat-down search and the officer involved told him he was not allowed to wear it in the hallway.  Plaintiff alleges that Jewish prisoners are allowed to wear the yarmulke without any similar restriction.

Plaintiff alleges that, on security grounds, the defendants "regularly use alternative means of excessiveness against" him and the general population with respect to recreational time, day space time, and opportunities to make legal phone calls.

3

Petitioner alleges that the population of MCCI is required to wear oversize green jumpsuits that they are not permitted to alter, again for security reasons.

Plaintiff alleges that he has been subjected to verbal slurs because of his Muslim faith.

Plaintiff challenges his placement in a maximum-security pod, which he alleges subjects him to more frequent cell searches and extended confinement in cells or, alternatively, when in the day area, exclusion from his cell except when the door is opened once an hour.

Plaintiff alleges a general "pattern of indifference" with respect to African-American and Muslim prisoners.  He asserts that MCCI should:  (1) permit prisoners to wear their kufis throughout the prison, (2) permit prisoners to purchase prayer rugs, (3) provide a proper Islamic diet, (4) permit Muslim prisoners to participate in more Islamic functions such as group classes and prayers, (5) permit female prisoners to select a female Imam to educate female Muslim prisoners, (6) tone down racial overtones, (7) require Gourmet Dining Services to serve proper Islamic meals, (8) stop limiting recreation time and day space time, (9) provide adequate law library time and access to the courts, (10) stop harassment including verbal slurs and disrespecting the Holy Qur'an, (11) segregate federal prisoners, (12) enhance the telephone system to permit federal prisoners to

4

make confidential legal calls, (13) assist contractors to be more sensitive to the needs of Muslim prisoners.  The Court construes these allegations as allegations that Plaintiff's personal needs in these areas have been denied.

Plaintiff alleges that MCCI officials made the celebration of the holy month of Ramadan a "horrific" experience by giving morning medication after the sun had risen and evening medication before the sun had set,[3] denying proper Islamic meals, and by forcing Plaintiff and other Muslim prisoners to pray in "repugnant" and "unsanitized" areas.

Finally, Plaintiff alleges that the water cooler jugs are routinely refilled by using water from the showers or utility sinks.

Plaintiff names as defendants: the Monmouth County Sheriff Department, Sheriff Kim Guadagno, Monmouth County, Warden William J. Fraser, Deputy Warden G. Bongiovi, Captain Fatagante, Lieutenant James Howell, Gourmet Dining Services, Gourmet Dining Services General Manager K.C. Jefferson, Swanson Services Corporation, Freeholder Barbara McMorrow, Freeholder John D'Amico, Freeholder Lillian Berry, Freeholder Robert Cliston, Freeholder Amy Mallat, and various Jane and John Doe defendants.

---

[3] It is not clear, here, whether Plaintiff is alleging that his medication, or that of other prisoners, was given at inappropriate times.

Plaintiff alleges that the conditions described in the Second Amended Complaint expose him and other Muslim prisoners to "a very substantial risk of serious psychological and physical harm," in violation of the Due Process Clause of the Fourteenth Amendment, that the conditions violate the Eighth Amendment, that the defendants have violated Plaintiff's rights to free exercise of his religion under the First Amendment, that defendants have retaliated against him in violation of the First Amendment, and that his right of access to the courts has been unconstitutionally restricted.  Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

Plaintiff is now confined at the Federal Detention Center in Philadelphia, Pennsylvania.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic

7

recitation of the elements of a cause of action will
not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
dismiss, courts "are not bound to accept as true a
legal conclusion couched as a factual allegation").
Factual allegations must be enough to raise a right to
relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

In applying these general standards to a § 1
[conspiracy] claim, we hold that stating such a claim
requires a complaint with enough factual matter (taken
as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement

> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

_Twombly_, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the
context of a § 1983 civil rights action, that the _Twombly_
pleading standard applies outside the § 1 antitrust context in
which it was decided.  _See_ _Phillips v. County of Allegheny_, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
_Twombly_ so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking _Twombly_ and the
> Court's contemporaneous opinion in _Erickson v. Pardus_,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of _Twombly_, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

_Phillips_, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of _any_ civil complaint, a court must

9

distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

11

IV.   <u>ANALYSIS</u>

A.   <u>Joinder</u>

Plaintiff asserts claims against government officials, municipal entities, private corporate defendants, employees of private corporate defendants, and various undescribed fictitious defendants.  He asserts claims of unconstitutional conditions of confinement under the Fourteenth Amendment, violations of the Free Exercise Clause under the First Amendment, violations under the Eighth Amendment, retaliation claims, and claims of denial of access to the courts.  These claims, against these various defendants, may not be joined in one action.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

13

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

Here, Plaintiff has not asserted any single claim against all defendants that presents questions of law or fact common to all. For example, the claim most broadly asserted, the First Amendment free-exercise claim, can be asserted under § 1983 only against a "state actor." Plaintiff, however, has sued Swanson Services Corporation and its employees, (Second Amended Complaint, ¶ 17), a private corporation and its employees, without alleging any facts that would suggest that the entity or individuals should be considered "state actors." If they are not "state actors," they are not liable to Plaintiff under the First Amendment, and the joinder requirement is not met.

Private parties may be liable under § 1983 only when they have acted under color of state law. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.), cert. denied, 516 U.S. 858 (1995)

14

(quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)).
The "under color of state law" requirement of 42 U.S.C. § 1983
has been treated identically to the "state action" requirement of
the Fourteenth Amendment.  See Mark, 51 F.3d at 1141 (citing
United States v. Price, 383 U.S. 787, 794 n.7 (1966)); Lugar v.
Edmondson Oil Co., 457 U.S. 922, 928 (1982); Rendell-Baker v.
Kohn, 457 U.S. 830, 838 (1982)).  State action exists under
§ 1983 only when it can be said that the government is
responsible for the specific conduct of which a plaintiff
complains.  Mark, 51 F.3d at 1141-42.  "Put differently, deciding
whether there has been state action requires an inquiry into
whether 'there is a sufficiently close nexus between the State
and the challenged action of [the defendants] so that the action
of the latter may fairly be treated as that of the State
itself.'"  Id. at 1142 (quoting Blum v. Yaretsky, 457 U.S. 991,
1004 (1982)).

     A private entity can be sued under § 1983 only where (1) it
"has exercised powers that are traditionally the exclusive
prerogative of the State," Mark, 51 F.3d at 1142; (2) the State
and the private party act in concert or jointly to deprive a
plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S.
144, 170-171 (1970); (3) the State has permitted a private party
to substitute his judgment for that of the State, Cruz v.
Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private

party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991); Mark, 51 F.3d at 1143.

See also DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of [constitutional] harm by private actors"), cert. denied, 519 U.S. 1111 (1997); Jones v. Arbor, Inc., 820 F. Supp. 205, 208 (E.D. Pa. 1993) (plaintiff did not allege that defendant corporation was a state actor or had such a symbiotic relationship with the state so as effectively to be an instrumentality of the state).

By contrast, here, Plaintiff has asserted that a private corporation, Swanson Services Corporation, and its unnamed employees, under contract, provided certain commissary services at MCCI.  This allegation, standing alone, is insufficient to permit this Court to find that Plaintiff has alleged that these defendants are "state actors."  See, e.g., Ellison v Broadus, 2009 WL 837717 (S.D. Miss. March 26, 2009) (dismissing with prejudice claims against operators of jail commissary because operators were not state actors); Plummer v. Valdez, 2006 WL

2713784 (N.D. Tex. Sept. 21, 2006) (same).  Nor is there anything about the provision of commissary services that, standing alone, would permit this Court to conclude that Swanson Services Corporation or its employees are performing state functions or are otherwise to be deemed "state actors."  Accordingly, the Second Amended Complaint is subject to dismissal for failure to meet the joinder requirements of Rules 18 and 20.

Moreover, with respect to the many defendants named as parties here, Plaintiff has failed to set forth the claims in a manner that permits the Court, or the parties, to determine which claims are asserted against which parties.  Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  ...  If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

It is not sufficient, in a complaint such as this asserting many claims against many defendants, it is not sufficient to identify the defendants in the beginning of the pleading and then fail to tie the factual allegations to the individual defendants alleged to be liable.  To "promote clarity," and to provide the notice required by Rule 8, the claims must be stated in a manner that specifies which defendant engaged in which specific acts that are alleged to give rise to liability.

In addition, however, many of the claims are otherwise subject to dismissal, as discussed more fully below.

B.   Vicarious Liability

Plaintiff has alleged claims against five members of the Board of Chosen Freeholders of Monmouth County.  The only allegations against these defendants are that they are "responsible for funding decisions affecting M.C.C.I."  Plaintiff also asserts claims against Warden Fraser, Deputy Warden Bongiovi, and Captain Fatagante, that appear to be based solely upon their status as administrators at MCCI.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

     To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom."  Bielevicz v. Dubinon,
915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v.
Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516
U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v.
Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must
demonstrate that, through its deliberate conduct, the
municipality was the moving force behind the plaintiff's injury.
Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)).  A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law."  [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983.  The first is where "the appropriate
> officer or entity promulgates a generally applicable

19

statement of policy and the subsequent act complained
of is simply an implementation of that policy."  The
second occurs where "no rule has been announced as
policy but federal law has been violated by an act of
the policymaker itself."  Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, the claims against the Freeholders, Warden Fraser,

Deputy Warden Bongiovi, and Captain Fatagante appear to be based

solely upon an untenable theory of vicarious liability and fail

to state a claim.

C.   Fourteenth Amendment Conditions Claims

Plaintiff alleges generally that the conditions under which

he is confined violate his rights under the Due Process Clause of

the Fourteenth Amendment.

A liberty interest protected by the Due Process Clause may

arise from either of two sources:  the Due Process Clause itself

or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);

Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.

1999).

Pre-trial detainees and convicted but unsentenced prisoners

retain liberty interests firmly grounded in the Due Process

Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399

F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341

(3d Cir. 2000).  Analysis of whether such a detainee or
unsentenced prisoner has been deprived of liberty without due
process is governed by the standards set out by the Supreme Court
in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at
157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...
>
> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...
>
> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose.  Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees. ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

Here, Plaintiff complains, generally, that he is required to wear a jumpsuit that he cannot alter, that he is confined to a maximum-security pod, that he is subjected to frequent cell searches and lockdowns, that he is required to use the unit bathroom instead of his cell toilet, and that he has limited recreational opportunities.  None of these conditions raises the spectre of unconstitutional punishment in violation of the Fourteenth Amendment.

D.   Free Exercise Claims

Plaintiff alleges that defendants have violated his First Amendment rights under the Free Exercise Clause by: (1) confiscating his prayer rug for security reasons,

22

(2) limiting the areas of the jail in which he can wear his kufi, (3) failing to serve meals that conform to his religious preferences, and (4) forcing him to pray in "awkward and unsanitary" conditions in the multi-purpose room or in cells. Plaintiff does not allege that he is completely deprived of acceptable food or that the food that is acceptable is insufficient to meet his nutritional needs.

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof... ." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendment.'" Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To

23

the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once such a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349.[4] The standards delineated in Turner and O'Lone indicate that when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349. The reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative

---

[4] More recently, in Employment Division, Dept. of Human Resources v. Smith, 494 U.S. 872, 878-79 (1990), the Supreme Court held that neutral laws of general applicability that incidentally impinge on religious practices do not violate the Free Exercise Clause. No federal Court of Appeals has yet held that the Smith test supplants the Turner and O'Lone analysis in the prison context. See Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002) and cases cited therein. See also Fraise v. Terhune, 283 F.3d 506, 515 n.5 (3d Cir. 2002) (acknowledging the issue, but declining to reach it in the absence of either party urging application of Smith).

means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.  However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. Thornburgh, 490 U.S. at 411.  Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor."  Shaw v. Murphy, 532 U.S. 223, 230-31 (2001).  Nevertheless, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams v. Morton, 343 F.3d 212, 217 (citing Overton v. Bazzetta, 539 U.S. 126 (2003).

In Williams v. Morton, the Court of Appeals for the Third Circuit considered, and rejected, a Free Exercise claim challenging the provision of vegetarian meals to Muslim inmates, who requested the addition of Halal meat.  Analyzing the prisoners' constitutional claims under the four-part test enunciated by the Supreme Court in Turner v. Safley, 482 U.S. 78

25

(1987), the Court held that (1) the provision of vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and budget, (2) that Muslim prisoners have various ways, other than eating the desired Halal meals with meat, to practice their religion, (3) that providing Halal meat meals to a substantial number of Muslim prisoners would have a marked effect on the prison community, and (4) the cost of providing Halal meat meals is not de minimis and so is not a ready alternative to vegetarian meals.

In addition, courts have held that prison regulations restricting the color of kufi caps and prohibiting the wearing of them outside of cells and religious services bear a reasonable relationship to legitimate prison security interests. See, e.g., Muhammad v. Lynaugh, 966 F.2d 901, 902-03 and n.6 (5th Cir. 1992) (collecting cases). Similarly, courts have upheld the confiscation of Muslim prayer rugs on grounds of institutional security. See, e.g., Pressley v. Beard, 266 Fed.Appx. 216, 2008 WL 501524 (3d Cir. Feb 26, 2008).

Although the Turner reasonableness analysis is fact-dependent, Plaintiff has failed, here, to allege facts suggesting that most of the limitations to his religious practices are unreasonable.

26

E.   <u>Eighth Amendment Claims</u>

Plaintiff asserts generally that the facts alleged constitute violations of his rights under the Eighth Amendment.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981).  As the facts alleged occurred while Plaintiff was a pre-trial detainee, not a convicted and sentenced prisoner, Plaintiff has failed to state a claim under the Eighth Amendment.

F.   <u>Retaliation Claim</u>

Plaintiff alleges, generally, that the facts alleged demonstrate unconstitutional retaliation.

To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  <u>Rauser v. Horn</u>, 2001 WL 185120 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at 225).  <u>See also</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 160 (3d Cir. 1997) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274

(1977)); <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386-99 (6th Cir. 1999), <u>cited with approval in</u> <u>Allah</u>, 229 F.3d at 225.

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quotation omitted); <u>see also</u> <u>United States Dep't of Transp., ex rel. Arnold v. CMC Eng'g</u>, 564 F.3d 673, 676 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. Thus, to state a claim for retaliation, a plaintiff must allege "'a chronology of events from which retaliation may be inferred.'" <u>Bendy v. Ocean County Jail</u>, 341 Fed.Appx. 799, 801-02 (3d Cir. 2009) (citation omitted).

Here, Plaintiff has failed to allege facts establishing a chronology of events from which retaliation may be inferred. It is not clear what acts he contends were retaliatory, nor what acts he contends were the protected activities that led to retaliation. Plaintiff has failed to state a claim for retaliation.

G.   <u>Access to Courts Claims</u>

Plaintiff alleges that he has inadequate law library time and inadequate access to courts.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the

29

incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be

30

considered, for example, in choosing the methods used to provide
meaningful access.  But the cost of protecting a constitutional
right cannot justify its total denial."  Bounds, 430 U.S. at
824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343.
Thus, "there is no First Amendment right to subsidized mail or
photocopying.  [Instead], the inmates must point to evidence of
actual or imminent interference with access to the courts."
Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners
meaningful access to the courts is the provision of counsel.  See
e.g., Bounds, 430 U.S. at 828 (approving the provision of
"adequate assistance from persons trained in the law"); Rauso v.
Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting
cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006)
(collecting cases).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3
(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, the Court notes that Plaintiff is represented by
counsel in his criminal case.  Plaintiff has alleged no barrier
to his bringing civil rights actions challenging his conditions
of confinement, nor has he alleged any "actual injury" arising
out of the law library conditions at MCCI.  Accordingly, he has

31

failed to state a claim for violation of his constitutional right of access to the courts.

H.   Harassment Claims

Plaintiff alleges that various defendants have verbally harassed him, particularly making slurs about his religious affiliation.

As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against calculated harassment.  Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation);  Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background

32

does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988).

Here, the challenged verbal slurs, while reprehensible, do not rise to the level of a constitutional violation.

I. Claims Regarding Telephone Use

Plaintiff alleges that the telephone system at MCCI does not permit federal prisoners to make confidential legal calls.

To the extent Plaintiff is attempted to assert that he has been deprived of his Sixth Amendment right to effective assistance of counsel in his criminal matter, he has failed to allege facts sufficient to state a claim.

J.    Claims of Other Prisoners

Several times in the Second Amended Complaint, Plaintiff alleges facts purporting to describe violations of other prisoners' constitutional rights.  For example, he asserts that female prisoners must be allowed to select a female Imam.

Plaintiff lacks standing to assert claims on behalf of other prisoners.  See Warth v. Seldin, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

K.    Requests for Injunctive Relief

Plaintiff requests various types of injunctive relief for the alleged constitutional violations.

Plaintiff now lacks standing to bring this claim for prospective injunctive relief.  Plaintiff has been transferred from MCCI to the Federal Detention Center.  Thus, Plaintiff cannot show that he faces a real and immediate threat of future injury arising out of the challenged conduct.  See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95 (1983); Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987).

V.   CONCLUSION

34

For the reasons set forth above, the Complaint will be dismissed without prejudice.[5]  Because it is conceivable that Plaintiff may be able to cure some of the deficiencies noted herein, Plaintiff will be granted leave to file a Third Amended Complaint.[6]

An appropriate order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated:  April 30, 2010

---

[5] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.